UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| DAVID SCHIED, *SUI JURIS*, A TOTALLY AND PERMANENTLY DISABLED QUAD-AMPUTEE, | 5:25-CV-05101-CCT |
| Plaintiff, | |
| vs. | **ORDER DISMISSING AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** |
| **KAREN MARTIN**, IN HER PERSONAL CAPACITY AND PUBLIC CAPACITY AS A CORRUPT AND DISCRIMINATING OUT OF-STATE HUD COMPLIANCE OFFICER, ENGAGED IN RICO ACTIVITIES WITH HIGHLAND PROPERTY MANAGEMENT, INC. ("HPMI") AND SUMMIT MANAGEMENT GROUP, INC. ("SMGI"); **ROBYN BEADLES**, IN HER PERSONAL CAPACITY AND PUBLIC CAPACITY AS A CORRUPT (AND DISCRIMINATING) OUT-OF-STATE HIGHLAND PROPERTY MANAGEMENT, INC. ("HPMI") REGIONAL MANAGER ENGAGED IN RICO ACTIVITIES; **ANGELA FOSTER**, IN HER PUBLIC CAPACITY AS AN IN-STATE HIGHLAND PROPERTY MANAGEMENT, INC. ("HPMI") APARTMENT MANAGER IN (POTENTIALLY HOSTILE) WITNESS OF THE CORRUPT (AND DISCRIMINATING) RICO ACTIVITIES; **SCOTT G. LONG**, IN HIS PERSONAL AND PUBLIC CAPACITY AS PRESIDENT OF HIGHLAND PROPERTY MANAGEMENT, INC. ("HPMI"), A CORPORATE FICTION OPERATING BY FRAUD AND MULTI-TIERED AND MULTI-JURISDICTIONAL RACKETEERING BY PATTERN IN | |

PRACTICE UNDER HIS LEADERSHIP; **HIGHLAND PROPERTY MANAGEMENT, INC**., ("HPMI") A QUASI-GOVERNMENTAL HUD CONTRACTOR CORRUPTLY AND DISCRIMINATINGLY MISMANAGING THE LOW INCOME HOUSING TAX CREDIT (HUD PROGRAM) BY FRAUD AND MULTI-TIERED AND MULTI-JURISDICTIONAL RACKETEERING BY PATTERN IN PRACTICE; **SUMMIT MANAGEMENT GROUP, INC.**, ("SMGI") A QUASI-GOVERNMENTAL HUD CONTRACTOR CORRUPTLY AND DISCRIMINATINGLY MISMANAGING THE LOW INCOME HOUSING TAX CREDIT (HUD PROGRAM) BY FRAUD AND MULTI-TIERED AND MULTI-JURISDICTIONAL RACKETEERING BY PATTERN IN PRACTICE; **UNKNOWN DOE**, AS 3RD PARTY HUD COMPLIANCE COMPANY HIRED AND PAID BY HPMI AND SMGI; **TY M. DALY**, IN HIS PERSONAL CAPACITY AND CORPORATE CAPACITY AS A LYNN JACKSON ATTORNEY PARTNERED CORRUPTLY AND DISCRIMINATINGLY WITH HPMI AND SMGI IN RICO ACTIVITY AND DOMESTIC TERRORISM; **LYNN, JACKSON, SCHULZ & LEBRUN, P.C.**, ("LJSLPC"), A GOVERNMENT LICENSED PRIVATE CORPORATION CORRUPTLY AND DISCRIMINATINGLY PARTNERED WITH HPMI AND SMGI IN RICO ACTIVITY; **JAMES EDWARDS**, IN HIS PERSONAL CAPACITY AND CORPORATE CAPACITY AS A PARTNER CORRUPTLY AND DISCRIMINATINGLY WITH HPMI AND SMGI IN RICO ACTIVITY AND DOMESTIC TERRORISM; **STEVENS, EDWARDS, & HALLOCK, P. C.**, A GOVERNMENT LICENSED PRIVATE CORPORATION CORRUPTLY AND DISCRIMINATINGLY

2

PARTNERED WITH HPMI AND SMGI IN RICO ACTIVITY; **LORI HOPPE**, IN HER PERSONAL CAPACITY AND PUBLIC CAPACITY AS A QUASI-GOVERNMENTAL HUD CONTRACTOR AND SECTION-8 HUD HOUSING EXECUTIVE DIRECTOR, CORRUPTLY (AND DISCRIMINATINGLY) OPERATING A SECTION-8 HUD HOUSING (PROGRAM) FOR "MBLCHRC" (BELOW) IN PARTNERSHIP WITH HPMI TO FOSTER RICO ACTIVITY AND FRAUD UPON AMERICAN TAXPAYERS WITHOUT TRANSPARENCY; **BETH PLEGGEMEYER-WHEELER**, IN HER PERSONAL CAPACITY AND PUBLIC CAPACITY AS SECTION-8 HUD HOUSING COORDINATOR CORRUPTLY AND DISCRIMINATINGLY OPERATING A SECTION-8 HUD HOUSING (PROGRAM) FOR "MBLCHRC" (BELOW) IN PARTNERSHIP WITH HPMI TO FOSTER RICO ACTIVITY AND FRAUD UPON AMERICAN TAXPAYERS WITHOUT TRANSPARENCY; **MEADE-BUTTE-LAWRENCE COUNTY HOUSING AND REDEVELOPMENT COMMISSION** ("MBLCHRC"), A QUASI-GOVERNMENTAL HUD CONTRACTOR CORRUPTLY (AND DISCRIMINATINGLY) OPERATING A SECTION-8 HUD HOUSING (PROGRAM) FOR "MBLCHRC" (BELOW) IN PARTNERSHIP WITH HPMI TO FOSTER RICO ACTIVITY AND FRAUD UPON AMERICAN TAXPAYERS WITHOUT TRANSPARENCY; **N. DREW SKJOLDAL**, IN HIS PERSONAL CAPACITY AND CORPORATE CAPACITY AS PARTNER TO NIES, KARRAS, SKJOLDOL, P.C. ("NKSPC"), CORRUPTLY AND DISCRIMINATINGLY PARTNERED WITH MBLCHRC HPMI AND SMGI IN RICO ACTIVITY AND DOMESTIC TERRORISM; **NIES,**

3

**KARRAS, SKJODOL, P.C.**, ("NKSPC") A GOVERNMENT LICENSED PRIVATE CORPORATION CORRUPTLY AND DISCRIMINATINGLY PARTNERED WITH MBLCHRC HPMI AND SMGI IN RICO ACTIVITY AND DOMESTIC TERRORISM; **ROGER JACOBS**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY AS HUD'S S.D. FIELD OFFICE DIRECTOR CORRUPTLY AND DISCRIMINATINGLY OVERSEEING THE RICO ACTIVITY AND DOMESTIC TERRORISM OF MBLCHRC, WHILE ALSO PARTNERED WITH HUD'S "OFHEO" AT THE SECONDARY LEVEL OF RICO COVER-UPS OF FRAUD, WASTE AND ABUSE UPON AMERICAN TAXPAYERS; **MATTHEW CERNY**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY AS HUD'S; **ORLANDO O. LOPEZ**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING CORRUPTLY (AND DISCRIMINATINGLY) AS A HUD FAIR HOUSING INVESTIGATOR; **(HUD'S) OFFICE OF FAIR HOUSING AND EQUAL OPPORTUNITY**, ("OFHEO"), A GOVERNMENT LICENSED QUASI-GOVERNMENTAL CORPORATION CORRUPTLY AND DISCRIMINATINGLY PARTNERED WITH MBLCHRC AND ROGER JACOB AT THE SECONDARY LEVEL OF RICO COVER-UPS OF FRAUD, WASTE AND ABUSE UPON AMERICAN TAXPAYERS; **HUD OFFICE OF THE INSPECTOR GENERAL** ("OIG"), A GOVERNMENT CORPORATION CORRUPTLY AND DISCRIMINATINGLY ENGAGED IN SECONDARY LEVEL OF RICO COVER-UPS OF FRAUD, WASTE AND ABUSE UPON AMERICAN TAXPAYERS; **SCOTT TURNER**, IN HIS PUBLIC CAPACITY AS THE U.S. PRESIDENT DONALD TRUMP'S SECRETARY FOR HUD,

4

BEING ENGAGED THROUGH HIS SUBORDINATE FIDUCIARIES AND FUNCTIONARIES IN SECONDARY LEVEL OF RICO COVER-UPS OF FRAUD, WASTE AND ABUSE UPON AMERICAN TAXPAYERS; **UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT** ("HUD"), A GOVERNMENTAL CORPORATION CORRUPTLY AND DISCRIMINATINGLY PARTNERED WITH MBLCHRC AND ROGER JACOB AT THE SECONDARY LEVEL OF RICO COVER-UPS OF FRAUD, WASTE AND ABUSE UPON AMERICAN TAXPAYERS; **SOUTH DAKOTA HOUSING DEVELOPMENT AUTHORITY**, ("SDHDA"), A GOVERNMENT OR QUASI-GOVERNMENTAL CORPORATION CORRUPTLY AND DISCRIMINATINGLY PARTNERED WITH THE STATE AND/OR FEDERAL GOVERNMENT(S) AT THE SECONDARY LEVEL OF RICO COVER-UPS OF FRAUD, WASTE AND ABUSE UPON AMERICAN TAXPAYERS; **LORRAINE POLLACK**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY AS HUD'S FORMER EXECUTIVE DIRECTOR FOR THE SDHDA (NOW UNDER EMPLOY OF THE USDA); **MURL WOODS**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY AS A CORRUPT AND DISCRIMINATING STAFF ATTORNEY AT DPLS, OPERATING ALSO IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **DAKOTA PLAINS LEGAL SERVICES**, ("DPLS"), A GOVERNMENT LICENSED QUASI-GOVERNMENTAL CORPORATION CORRUPTLY AND DISCRIMINATINGLY OPERATING IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS

5

UNDER THE OVERSEEING AUTHORITY OF THE "LSC" (BELOW); **EUGENE YUK**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY AS PROGRAM COUNSELOR FOR THE (LSC'S) OFFICE OF COMPLIANCE AND ENFORCEMENT ("OCE") OPERATING CORRUPTLY AND DISCRIMINATINGLY IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS UNDER THE OVERSEEING AUTHORITY OF THE "LSC" (BELOW); **("LSC'S") OFFICE OF COMPLIANCE AND ENFORCEMENT** ("OCE"), A GOVERNMENT LICENSED QUASI-GOVERNMENTAL CORPORATION CORRUPTLY AND DISCRIMINATINGLY OPERATING IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS UNDER THE OVERSEEING AUTHORITY OF THE "LSC" (BELOW); **LEGAL SERVICES CORPORATION**, ("LSC"), A GOVERNMENT LICENSED GOVERNMENTAL CORPORATION CORRUPTLY AND DISCRIMINATINGLY OPERATING IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **ROXANNE CARUSO**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING CORRUPTLY AND DISCRIMINATINGLY AS ("LSC'S") ASSISTANT INSPECTOR GENERAL FOR AUDIT; **CAROL BERGMAN**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING CORRUPTLY AND DISCRIMINATINGLY AS ("LSC'S") VICE PRESIDENT FOR GOVERNMENT RELATIONS AND PUBLIC AFFAIRS; **UNITED STATES OF AMERICA**, A GOVERNMENT CORPORATION CORRUPTLY AND DISCRIMINATINGLY OPERATING IN FRAUD, WASTE AND

6

ABUSE AGAINST THE SPIRIT AS WELL AS THE LETTER OF THE LAWS INSTITUTED BY THE THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **DONALD TRUMP**, IN HIS PUBLIC CAPACITY OF FORMER AND CURRENT U.S. PRESIDENT OVERSEEING THE EXECUTIVE BRANCH STILL FROTH WITH MULTIPLE TIERS OF FRAUD, WASTE, AND ABUSE OF TAXPAYER FUNDING FOR THE VARIED DEPARTMENTS, BUREAUS, DIVISIONS, SECTIONS, UNITS, OFFICES, AGENCIES, ETC OTHERWISE UNDER FIDUCIARY TRUSTS IN CONTRACTED SERVICE TO THE SOVEREIGN AMERICAN PEOPLE; **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES** "DHHS", A GOVERNMENT CORPORATION CORRUPTLY AND DISCRIMINATINGLY OPERATING IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **ROBERT F. KENNEDY**, IN HIS PUBLIC CAPACITY AS U.S. PRESIDENT'S SECRETARY FOR THE DHHS OF THE TRUMP ADMINISTRATION; **CENTERS FOR MEDICARE AND MEDICAID SERVICES**, A GOVERNMENT CORPORATION CORRUPTLY AND DISCRIMINATINGLY OPERATING IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **DR. MEHMET OZ**, IN HIS PUBLIC CAPACITY AS CMS ADMINISTRATOR FOR THE DHHS OF TRUMP ADMINISTRATION; **SOCIAL SECURITY ADMINISTRATION**, ("SSA"), A GOVERNMENT CORPORATION CORRUPTLY AND DISCRIMINATINGLY OPERATING IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **FRANK BISIGNANO**, IN HIS PUBLIC

CAPACITY AS SSA COMMISSIONER AND CEO OF THE IRS FOR THE TRUMP ADMINISTRATION; **MARTIN O'MALLEY**, IN HIS PRIVATE CAPACITY AND HIS PUBLIC CAPACITY AS THE FORMER SSA COMMISSIONER; **U.S. DEPARTMENT OF TREASURY**, A GOVERNMENT CORPORATION CORRUPTLY AND DISCRIMINATINGLY OPERATING IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **SCOTT BESSENT**, IN HIS PUBLIC CAPACITY AS SECRETARY TO THE U.S. PRESIDENT FOR THE U.S. DEPARTMENT OF TREASURY AND THE COMMISSIONER OF THE INTERNAL REVENUE SERVICE; **INTERNAL REVENUE SERVICE**, A BUREAU WITHIN THE U.S. DEPARTMENT OF TREASURY RESPONSIBLE FOR VERIFYING ELIGIBILITY FOR TAXATION WAIVERS BASED UPON FACTS; **U.S. DEPARTMENT OF GOVERNMENT EFFICIENCY**, ("DOGE"), A GOVERNMENT CORPORATION DISCRIMINATINGLY OPERATING TO DISREGARD CERTAIN REPORTS OF FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **GOVERNMENT ACCOUNTABILITY OFFICE**, ("GAO"). A GOVERNMENT CORPORATION CORRUPTLY AND DISCRIMINATINGLY OPERATING IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **U.S. DEPARTMENT OF JUSTICE**, A WEAPONIZED GOVERNMENT CORPORATION CORRUPTLY AND DISCRIMINATINGLY OPERATING IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE

8

AMERICAN TAXPAYERS; **PAM BONDI**, IN HER PUBLIC CAPACITY AS U.S. ATTORNEY GENERAL DISCRIMINATINGLY OPERATING TO DISREGARD CIVIL RIGHTS DISCRIMINATION COMPLAINTS, AS WELL AS CERTAIN COMPLAINTS ABOUT FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **FEDERAL BUREAU OF INVESTIGATION**, A WEAPONIZED GOVERNMENT CORPORATION CORRUPTLY AND DISCRIMINATINGLY OPERATING IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **KASH PATEL**, IN HIS PUBLIC CAPACITY AS FBI DIRECTOR DISCRIMINATINGLY OPERATING TO DISREGARD CIVIL RIGHTS DISCRIMINATION COMPLAINTS, AS WELL AS CERTAIN COMPLAINTS ABOUT FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **MERRICK GARLAND**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING CORRUPTLY AND DISCRIMINATINGLY AS U.S. ATTORNEY GENERAL; **ALISON RAMSDELL**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING CORRUPTLY AND DISCRIMINATINGLY AS U.S. ATTORNEY FOR THE DISTRICT OF SOUTH DAKOTA; **BEN PATTERSON**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING CORRUPTLY AND DISCRIMINATINGLY AS ASSISTANT U.S. ATTORNEY FOR THE DISTRICT OF SOUTH DAKOTA; **ROBERTO LANGE**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING CORRUPTLY AND DISCRIMINATINGLY AS CHIEF JUDGE

9

FOR THE USDC-SD; **LAWRENCE PIERSOL**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING CORRUPTLY AND DISCRIMINATINGLY AS FEDERAL JUDGE WITH INACTIVE SENIOR STATUS AS FORMER PRESIDENT AND BOARD OF DIRECTORS MEMBER OF THE FEDERAL JUDGES ASSOCIATION, A MEMBER OF THE UN'S INTERNATIONAL ASSOCIATION OF JUDGES OPERATING UNDER FOREIGN POWER AND OPERATING UNDER A FOREIGN CONSTITUTION; **U.S. DISTRICT COURT FOR THE DISTRICT OF SOUTH DAKOTA**, ("USDC-SD"), A GOVERNMENT CORPORATION OPERATING CORRUPTLY AND DISCRIMINATINGLY; **STATE OF SOUTH DAKOTA**, (A.K.A. "THE STATE" AND/OR THE "STATE") A WEAPONIZED GOVERNMENT CORPORATION OPERATING OPERATING CORRUPTLY AND DISCRIMINATINGLY IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **DEPARTMENT OF SOCIAL SERVICES**, ("DSS") A WEAPONIZED GOVERNMENT CORPORATION OPERATING CORRUPTLY AND DISCRIMINATINGLY IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **DEPARTMENT OF HUMAN SERVICES**, ("DHS") A WEAPONIZED GOVERNMENT CORPORATION OPERATING OPERATING CORRUPTLY AND DISCRIMINATINGLY IN FRAUD, WASTE AND ABUSE UPON THE U.S. CONGRESS AND THE AMERICAN TAXPAYERS; **KRISTI NOEM**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING CORRUPTLY AS

10

FORMER SOUTH DAKOTA GOVERNOR OVERSEEING FEDERAL FUNDS DISBURSEMENTS AND PROGRAM OPERATIONS OF STATE MEDICAID PROGRAMS OPERATING CORRUPTLY (AND DISCRIMINATINGLY) IN FRAUD, WASTE, AND ABUSE OF TAXPAYER FUNDS; **MARTY JACKLEY**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY AS SOUTH DAKOTA ATTORNEY GENERAL ("AG"); OPERATING CORRUPTLY (AND DISCRIMINATINGLY) IN FRAUD, WASTE, AND ABUSE OF TAXPAYER FUNDS OTHERWISE DEDICATES TOWARD INVESTIGATING AND PROSECUTING REPORTS OF MEDICAID FRAUS, STATUTORY WHISTLEBLOWER CRIMES, AND CONSTITUTIONAL VIOLATIONS REFUSING TO PROTECT CRIME VICTIMS; RIGHTS; **STEVEN JENSEN**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING DISCRIMINATINGLY AND CORRUPTLY AS CHIEF JUSTICE OF THE UNIFIED JUDICIAL SYSTEM OF SOUTH DAKOTA REFUSING TO PROTECT CRIME VICTIMS' RIGHTS; **SHIRLEY JAMESON-FERGEL**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING DISCRIMINATINGLY AND CORRUPTLY AS CLERK OF THE COURT FOR THE SOUTH DAKOTA SUPREME COURT AND STEVEN JENSEN; **ERIC STRAWN**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING DISCRIMINATINGLY AND CORRUPTLY AS 4TH CIRCUIT COURT JUDGE; **CAROL LATUSECK**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING DISCRIMINATINGLY AND CORRUPTLY AS MAGISTRATE/CLERK AT THE 4TH CIRCUIT COURT; **ERIC**

11

**MONSON**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY AS ONE OF TWO STATE BAR MEMBER IMPOSTORS DISCRIMINATINGLY AND CORRUPTLY CLAIMING THE SAME TITLE AS CHIEF HEARING EXAMINER FOR THE STATE OF SOUTH DAKOTA; **WADE REIMERS**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING DISCRIMINATINGLY AND CORRUPTLY AS DSS COUNSEL AND ASSISTANT AG FOR THE STATE OF SOUTH DAKOTA, ALSO IN MEMBERSHIP TO THE SD STATE BAR; **CATHERINE WILLIAMSON**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY AS ONE OF TWO STATE BAR MEMBER IMPOSTORS DISCRIMINATINGLY AND CORRUPTLY CLAIMING THE SAME TITLE AS CHIEF HEARING EXAMINER FOR THE STATE OF SOUTH DAKOTA; **SHAWNIE RECHTENBAUGH**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING DISCRIMINATINGLY AND CORRUPTLY AS S.D. GOVERNOR'S SECRETARY TO THE DEPARTMENT OF HUMAN SERVICES (DHS); **LAURI GILL**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING DISCRIMINATINGLY AND CORRUPTLY AS FORMER S.D. GOVERNOR'S SECRETARY TO THE DEPARTMENT OF SOCIAL SERVICES (DSS); **MATTHEW ALTHOFF**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING DISCRIMINATINGLY AND CORRUPTLY AS S.D. GOVERNOR'S SECRETARY TO THE DEPARTMENT OF SOCIAL SERVICES (DSS); **JEREMY LIPPERT**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING DISCRIMINATINGLY AND CORRUPTLY AS DSS LEAD COUNSEL, ASSISTANT AG AND DIVISION DIRECTOR FOR

12

DISCRIMINATION OFFICER FOR THE STATE OF SOUTH DAKOTA, , ALSO IN MEMBERSHIP TO THE SD STATE BAR; **JENNA HOWELL**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING DISCRIMINATINGLY AND CORRUPTLY AS DHS LEAD COUNSEL AND ASSISTANT AG AND DIVISION DIRECTOR FOR DISCRIMINATION OFFICER FOR THE STATE OF SOUTH DAKOTA, ALSO IN MEMBERSHIP TO THE SD STATE BAR; **CITY OF SPEARFISH**, (POLICE DEPARTMENT, MAYOR JOHN SENDEN, AND CITY COUNCIL MEMBERS (JAMIE HAFNER, DEAN MYERS, LARRY KLARENBEEK, SCOTT HOURIGAN, ANA RATH, PAM JACOBS) OPERATING DISCRIMINATINGLY AND CORRUPTLY REFUSING TO PROTECT CRIME VICTIMS' RIGHTS; **SAMANTHA ROSENAU**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING CORRUPTLY AS POLICE LIEUTENANT FOR THE CITY OF SPEARFISH, (S.D.) REFUSING TO PROTECT CRIME VICTIMS' RIGHTS; **DAVID KNOX**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING DISCRIMINATINGLY AND CORRUPTLY AS CITY ATTORNEY FOR THE CITY OF SPEARFISH, (S.D.) REFUSING TO PROTECT CRIME VICTIMS' RIGHTS; **LAWRENCE COUNTY SHERIFF DEPARTMENT**, IN ITS CORPORATE, PUBLIC CAPACITY OPERATING CORRUPTLY TO DENY CRIME VICTIMS' PROTECTIONS, REFUSING TO INVESTIGATE PUBLIC CORRUPTION, AND REFUSAL TO ALLOW ACCESS TO COUNTY GRAND JURY; **BRENDA HARVEY**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY OPERATING DISCRIMINATINGLY AND CORRUPTLY

13

AS THE STATE'S ATTORNEY FOR LAWRENCE COUNTY, S.D REFUSING TO PROTECT CRIME VICTIMS' RIGHTS AND PRESENTMENT OF PUBLIC CORRUPTION TO COUNTY GRAND JURY; **AMERICAN FAMILY INSURANCE**, IN ITS CORPORATE, PUBLIC CAPACITY OPERATING CORRUPTLY IN SELLING BOGUS HOMEOWNER'S INSURANCE POLICIES; **JASON GELLETT AGENCY, LLC**, IN ITS CORPORATE, PUBLIC CAPACITY OPERATING CORRUPTLY IN SELLING BOGUS HOMEOWNER'S INSURANCE POLICIES; **JASON GELLETT**, IN HIS PRIVATE CAPACITY OPERATING CORRUPTLY IN SELLING BOGUS HOMEOWNER'S INSURANCE POLICIES; **MONUMENT HEALTH NETWORK, INC.**, ("MHNI"), IN ITS CORPORATE, PUBLIC CAPACITY OPERATING CORRUPTLY IN VIOLATING DISABILITY RIGHTS, MANDATORY REPORTING AND OTHER LAWS AND DEPRIVING OF PRIVATE RIGHTS UNDER COLOR OF LAW; **MARCIA OLSON, FINANCIAL DIRECTOR FOR MHNI**, IN HER PRIVATE AND PUBLIC CAPACITY, CORRUPTLY VIOLATING CONSUMER PROTECTION, MANDATORY REPORTING, AND OTHER LAWS WHILE DEPRIVING OF PRIVATE RIGHTS UNDER COLOR OF LAW; **PIVOT PROSTHETICS AND ORTHOTICS**, ("PPAO"), IN ITS CORPORATE, PUBLIC CAPACITY OPERATING CORRUPTLY IN VIOLATING CONSUMER PROTECTION, MANDATORY REPORTING, AND OTHER LAWS WHILE DEPRIVING OF PRIVATE RIGHTS UNDER COLOR OF LAW; **ROCHELLE RICE**, CO-OWNER AND OFFICE MANAGER OF PPAO IN HER PRIVATE AND PUBLIC CAPACITY,

14

CORRUPTLY VIOLATING CONSUMER PROTECTION, MANDATORY REPORTING, AND OTHER LAWS WHILE DEPRIVING OF PRIVATE RIGHTS UNDER COLOR OF LAW; **BRODIE RICE**, OWNER AND CERTIFIED PROSTHETIST OF PPAO IN HIS PRIVATE AND PUBLIC CAPACITY, CORRUPTLY VIOLATING CONSUMER PROTECTION MANDATORY REPORTING, AND OTHER LAWS WHILE DEPRIVING OF PRIVATE RIGHTS UNDER COLOR OF LAW; **AMERICAN BOARD OF CERTIFICATION**, ("ABC"), IN ITS CORPORATE, PUBLIC CAPACITY OPERATING CORRUPTLY IN VIOLATING DISABILITY RIGHTS AND OTHER LAWS AND DEPRIVING OF PRIVATE RIGHTS UNDER COLOR OF LAW; **MOLLY MCGUIRE**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY AS PROFESSIONAL CREDENTIALING ADMINISTRATOR FOR THE ABC VIOLATING DISABILITY RIGHTS AND OTHER LAWS AND DEPRIVING OF PRIVATE RIGHTS UNDER COLOR OF LAW; **STEVE FLETCHER**, IN HIS PRIVATE CAPACITY AND PUBLIC CAPACITY AS CPO AND DIRECTOR OF PROFESSIONAL CREDENTIALING FOR THE ABC VIOLATING DISABILITY RIGHTS AND OTHER LAWS AND DEPRIVING OF PRIVATE RIGHTS UNDER COLOR OF LAW; **SUZANNE PIERCE**, IN HER PRIVATE CAPACITY AND PUBLIC CAPACITY GENERAL COUNSEL FOR THE CORRUPT ABC VIOLATING DISABILITY RIGHTS AND OTHER LAWS AND DEPRIVING OF PRIVATE RIGHTS UNDER COLOR OF LAW; **DISABILITY RIGHTS SOUTH DAKOTA**, IN ITS CORPORATE, PUBLIC CAPACITY OPERATING CORRUPTLY IN

15

| | |
|---|---|
| ACCEPTING STATE AND/OR FEDERAL FINDING TO PROTECT REPORTED DISABLED CRIME VICTIMS AND ADVOCATE DISABILITY RIGHTS, WHILE EMPLOYING DISCRIMINATORY DEI AND CANCEL CULTURE PRACTICES AGAINST ANGLO-AMERICAN MALE CRIME VICTIMS; AND **DOES 1-75**, TO BE LISTED AS NUMEROUS ASSISTANTS TO THE S.D. ATTORNEY GENERAL, MEMBERS OF THE THE STATE BAR OF SOUTH DAKOTA, AND S.D. GOVERNMENT AND FEDERAL GOVERNMENT AND QUASI-GOVERNMENT PRINCIPALS AND AGENTS AND FIDUCIARIES AND FUNCTIONARIES, IN THEIR PRIVATE AND PUBLIC CAPACITIES; | |
| Defendants. | |

Plaintiff, David Schied, commenced this pro se action by filing a "Complaint Brief . . . for Declaratory, Injunctive, Structural, and Commercial Relief; for Damages; and For Emergency Interim Relief." Docket 1 at 1 (capitalization and emphasis in original). This Court granted Schied's motion for leave to proceed in forma pauperis and dismissed his "Complaint Brief" without prejudice for failure to comply with Federal Rule of Civil Procedure 8. Docket 22. But the Court also ordered that Schied, if he so chooses, may file an amended complaint within 30 days that complies with the pleading requirements of the Federal Rules of Civil Procedure. *Id.* at 29–30. On April 1, 2026, which was the deadline for Schied to file an amended complaint, Schied

16

filed a "Motion for Clarification of Scope and Effect of Dismissal Order." Docket 31.[1]

Although Schied asserted that he was not seeking reconsideration of the order dismissing his complaint for failure to comply with Rule 8, it appeared that was indeed what he intended to do. Because the Court's dismissal order, Docket 22, clearly and specifically addressed every issue on which Schied purportedly sought clarification, *compare* Docket 31 at 5–6, *with* Docket 22 at 29–30, the Court denied Schied's motion for clarification of scope and effect of dismissal order, Docket 31. But the Court extended until April 24, 2026, Schied's time to file an amended complaint that complies with the pleading requirements of the Federal Rules of Civil Procedure. Docket 32 at 18. Schied filed an amended complaint on April 27. 2026.[2] Docket 33.

## I.     **Legal Standard**

Because this Court granted Schied's motion for leave to proceed in forma pauperis under § 1915(a), the Court must determine whether his amended complaint should be dismissed under § 1915(e)(2)(B). *Martin-Trigona v. Stewart*, 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); *see also Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). A court must dismiss claims if they "(i)

---

[1] Following entry of the order dismissing his "Complaint Brief" without prejudice, Schied filed a notice of appeal to the United States Court of Appeals for the Eighth Circuit. Docket 25. The Eighth Circuit dismissed Schied's appeal for lack of jurisdiction as premature on March 26, 2026. Docket 28.

[2] Although the Court's order specifically directed Schied to file his amended complaint on or before April 24, 2026, Docket 32 at 18, because the amended complaint arrived by mail in an envelope that was postmarked on April 22, 2026, Docket 33-1, the Court will consider the amended complaint as timely filed.

[are] frivolous or malicious; (ii) fail[] to state a claim on which relief may be granted; or (iii) seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A district court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988) (citing *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint

18

are true[.]" 550 U.S. at 555 (internal citation and footnote omitted); *see also*

*Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam)

(noting that a complaint "must contain either direct or inferential allegations

respecting all material elements necessary to sustain recovery under some

viable legal theory" (citing *Twombly*, 550 U.S. at 553–63)).

## II.    Factual Background[3]

Schied is a totally and permanently disabled quad-amputee. Docket 33

at 9. The amended complaint divides the numerous defendants into six

modules. *Id.* at 12–29. "Module 1" consists of state executive and Medicaid

administration defendants, including the State of South Dakota, the South

Dakota Department of Social Services, the South Dakota Department of

Human Services, and various individuals including Kristi Noem, Tom Eads,

Laurie Gill, Matthew Althoff, Shawnie Rectenbaugh, Angie Reichert, Kellie

Werner, Kim Terrill, and Doe defendants. *Id.* at 12. Although the Court directed

Schied to file an amended complaint that is a single pleading and stand-alone

document, *see* Docket 22 at 29, the amended complaint does not specify the

role, position, or title of the individuals identified as defendants in any of the

modules. *See generally* Docket 33. Despite the Court's directive, the Court

assumes that Schied continues to rely on the various attachments and

---

[3] The Court summarizes the facts as alleged in Schied's amended complaint and, as required at this stage of the litigation, accepts the factual allegations as true, but makes no finding whether Schied may be able to come forward with competent admissible evidence to support his allegations.

appendices to his initial complaint for a full identification and description of all purported defendants.

The "Module 1" defendants, "individually and collectively, subjected [Schied] to shifting classifications, fragmented agency responses, opaque eligibility reasoning, delays, contradictory notices, and failure to provide transparent explanations regarding available medical-assistance protections and related benefits." *Id.* at 12–13. The "Module 1" defendants "elevated internal policy, administrative convenience, or jurisdictional compartmentalization over substantive statutory obligations[,]" causing Schied loss or restriction of medical assistance, uncovered medical costs, housing instability, emotional distress, financial loss, and barriers affecting mobility, health, and equal participation in civil life. *Id.* at 13.

The "Module 2" defendants are described as state attorneys, administrative hearings, and record-control defendants, including Marty Jackley, Brenda Harvey, Jeremy Lippert, Jenna Howell, Catherine Williamson, Scott Bollinger, the South Dakota Bureau of Administration, Eric Monson, Wade Reimers, and Doe defendants. *Id.* at 14. When Schied raised repeated objections regarding the denial of medical assistance, the "Module 2" defendants "failed to provide neutral and meaningful review." *Id.* These defendants "emphasized technical closure over substantive correction." *Id.* Some of the "Module 2" defendants, whom Schied does not identify, knew or should have known that Schied faced "ongoing medical vulnerability, financial

20

instability, and cascading consequences from erroneous or unlawful administrative actions[,]" but failed to intervene. *Id.* at 14–15.

Schied identifies state judicial, clerk, court-administrative, and risk-pool defendants as "Module 3" defendants. *Id.* at 16. The "Module 3" defendants include Robert "Bob" Morris, Carol Latuseck, Eric Strawn, the Fourth Circuit Court, Shirley Jameson-Fergel, Steven Jensen, the South Dakota Supreme Court, the South Dakota Public Assurance Alliance, and Doe defendants. *Id.* at 16–17. When Schied raised objections regarding "administrative wrongdoing, denial of benefits, record irregularities, and related constitutional harms[,]" because of delayed or incomplete docketing and altered or narrowed case framing, Schied was deprived of an "accessible, accurate, and substantively fair adjudicative process." *Id.* at 17, 19. The "Module 3" defendants "ratify incomplete records, elevate procedural form over factual substance, and terminate matters without full examination of the evidence tendered." *Id.* at 18. Some of the "Module 3" defendants, whom Schied does not identify, knew or should have known that he was "attempting to vindicate urgent rights affecting medical access, financial survival, and equal protection of the laws[,]" but "failed to ensure accessible, accurate, and substantively fair adjudicative processes." *Id.* at 19.

The "Module 4" defendants are "medical providers, law enforcement, local government, and property-harm defendants[.]" *Id.* at 20 (capitalization and emphasis in original omitted). These defendants "exercised direct or indirect authority over medical treatment, prosthetic access, disability documentation,

21

property security, law-enforcement response, insurance interests, local government functions, and conditions materially affecting [Schied's] daily survival, safety, mobility, functional independence, and housing continuity." *Id.* The "Module 4" defendants were placed on notice of Schied's urgent need for medical care, mobility support, reasonable accommodations, and housing, but failed to respond to Schied's needs. *Id.* at 21. "Certain medical and provider defendants[,]" whom Schied does not identify, failed to provide timely medical intervention. *Id.* "Certain local-government and law-enforcement defendants" did not respond appropriately to Schied's complaints of criminal conduct. *Id.* Several of the "Module 4" defendants, whom Schied does not identify, "knew, or reasonably should have known, that [Schied] was a *totally and permanently disabled quad-amputee* with heightened dependence upon continuity of care, accessible housing, and prompt good-faith responses[,]" but failed to act to prevent foreseeable harm. *Id.* at 22.

The "Module 5" defendants are federal executive agencies Schied alleges are responsible for benefit administration, financial extraction, and oversight, including the United States of America, the Department of Health and Human Services, the Centers for Medicare and Medicaid Services, the Social Security Administration, the Internal Revenue Service, the Department of the Treasury, the Department of Government Efficiency, and the Department of Justice. *Id.* at 23. Instead of "ensuring that federal funds and disability protections were lawfully administered at the state and local levels," the "Module 5" defendants "allowed responsibility to be diffused across agencies and jurisdictions[,]"

22

resulting in a loss of federal benefits to Schied. *Id.* at 24. Some of the "Module 5" defendants, whom Schied does not identify, possess "authority to investigate and prosecute fraud, civil-rights violations, misuse of federal funds, or systemic beneficiary harm," but failed to intervene on Schied's behalf. *Id.* Because of the alleged conduct of the "Module 5" defendants, Schied's monthly Social Security benefits were depleted, and his ability to secure housing and medical assistance was reduced. *Id.* at 25–26.

The "Module 6" defendants include the United States District Court for the District of South Dakota, three judges in the District of South Dakota, the Clerk of Court for the District of South Dakota, and the United States Court of Appeals for the Eighth Circuit. *Id.* at 27. Schied alleges that the "Module 6" defendants have denied him meaningful court access and contends that there has been "a long documented litigation history spanning Michigan, federal, and South Dakota proceedings from approximately 2004 forward, including multiple prior actions against governmental actors and the United States itself." *Id.* at 28 n.42.

Schied seeks declaratory and injunctive relief as well as nominal, compensatory, and punitive damages. *Id.* at 39. But the requested injunctive relief is broad and non-specific. *Id.*

### III.   Analysis

#### A.   Compliance with Pleading Requirements of the Federal Rules of Civil Procedure

Schied's amended complaint does not comply with Rule 8(a)(2) and Rule 8(d)(1). The amended complaint also fails to comply with the District of South Dakota's Civil Local Rules of Practice. For the most part, it is single-spaced, and it includes 44 footnotes with a font size much smaller than 12 point. *See* D.S.D. Civ. LR 83.4.A (stating that text must be double-spaced and at least in 12-point font). Further, despite the fact that the Court's order dismissing his initial complaint specifically stated that Schied did not "include a caption naming all defendants as required by Federal Rule of Civil Procedure 10(a)[,]" Docket 22 at 16, Schied failed to include a caption in his amended complaint naming all defendants.[4] *See generally* Docket 33. Accordingly, while the Court could dismiss Schied's amended complaint for failing to comply with the Federal Rules of Civil Procedure and this Court's previous order, *see* Docket 32, the Court has attempted to evaluate each of Schied's claims.

#### B.   Schied's Claims

##### 1.   Preliminary Statement

---

[4] Instead, Schied criticizes this Court and the Clerk of Court staff because the case caption does not correspond to the Appendix A-1 roster and associated U.S. Marshals Service documents. Docket 33 at 1–2, n.1. Neither this Court nor the Clerk of Court staff should be required to review appendices and related documents spanning hundreds of pages to identify all the named defendants in any pro se case.

Schied's allegations are conclusory and not specific to any named defendant. For example, Schied asserts that the conduct of the "Module 1" defendants included:

> maintaining opaque and contradictory eligibility determinations; failing to provide timely and intelligible notice of decisions; refusing meaningful review repeated notice of harm; elevating internal policy over governing law; fragmenting responsibility among agencies; failing to accommodate known disability-related barriers; and permitting foreseeable harms to continue after actual or constructive notice.

Docket 33 at 30. But nowhere in his amended complaint does he allege any facts demonstrating what each individual "Module 1" defendant did to give rise to these allegations. *See generally id.* In Count III of the amended complaint, Schied alleges that "all defendants who are public entities, recipients of federal financial assistance, state actors, contractors performing public functions, or persons acting in concert with such entities[]" "knew, or reasonably should have known, of [Schied's] disabilities, heightened vulnerability, and need for reasonable accommodations" but

> denied equal participation, imposed avoidable barriers, refused or delayed reasonable accommodations, relied upon rigid procedures without individualized modification, failed to provide reasonable processes, withheld documentation needed for accommodations, and treated disability-related needs as burdens rather than protected rights.

*Id.* at 32. But the amended complaint contains no factual allegations to support these broad, conclusory assertions. *See generally id.* Further, the amended complaint does not even specify which of the 100-plus defendants Schied contends are covered by this count. Finally, nowhere in the amended complaint does Schied assert any specific facts to put each of the defendants

25

against whom this count is directed on notice of what that specific defendant did that allegedly violates the Americans with Disabilities Act or the Rehabilitation Act. *See generally id.*

In Count IV, Schied contends that "[c]ertain" Module 4 defendants "imposed or enforced conditions requiring [him] to accept disadvantageous or coercive arrangements in order to preserve access to medical services or personal security, while others failed to act to prevent foreseeable harm despite possessing authority to do so." *Id.* at 34. But Schied does not identify which of the "Module 4" defendants imposed or enforced disadvantageous or coercive arrangements or failed to act to prevent foreseeable harm or include any specific factual allegations notifying any of the "Module 4" defendants what specific actions each defendant took that Schied contends gives rise to liability. *See generally id.*

"A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Tatone v. Suntrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012). Without any supporting factual allegations, Schied's conclusory statements fail to state a claim upon which relief can be granted. "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).

26

Finally, many of the individual defendants as well as organizational defendants are not specifically discussed or mentioned in the body of the amended complaint. "If a defendant is not mentioned in the body of the complaint, the complaint does not state a cause of action against that defendant." *Startup v. Bear Stearns Residential Mortg. Corp.*, No. 10-01961, 2011 WL 13227926, at *2 (C.D. Cal. Feb. 14, 2011) (citation omitted); *see also Jones v. Town of Quartzsite*, No. CV-13-02170, 2015 WL 12551172, at *5 (D. Ariz. Mar. 30, 2015) (finding plaintiff failed to state a claim when complaint failed to mention defendants), *aff'd*, 677 F. App'x 317 (9th Cir. 2017); *Hobson v. Temple-Inlet*, No. 07-1318, 2007 WL 3101837, at *2 (D. Ariz. Oct. 22, 2007) (dismissing case under Rule 12(b)(6) because complaint did not mention the defendant). For these reasons, Schied's amended complaint is dismissed without prejudice under 42 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

### 2.    Count I

Despite the conclusory nature and lack of supporting factual allegations, it is clear that many of Schied's purported causes action are not viable against many of the named defendants. Thus, for the sake of completeness the Court now outlines why many of Schied's purported causes of action against various defendants are not viable.

In Count I, Schied alleges claims against that the "Module 1" defendants arising under 42 U.S.C. § 1983 and "federal disability-protection statutes." Docket 33 at 30. In addition to violation of his rights under "federal disability-

27

protection statutes," Schied alleges violation of his procedural due process and equal protection rights. *Id.*

The Eleventh Amendment bars many of Schied's claims. The State of South Dakota, the South Dakota Department of Social Services, and the South Dakota Department of Human Services are "Module 1" defendants. *Id.* at 12. "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity[.]" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (citation omitted); *see also Cory v. White*, 457 U.S. 85, 90–91 (1982) (recognizing that the Eleventh Amendment bars suit against a state entity regardless of whether money damages or injunctive relief is sought); *Minn. State. Coll. Student Ass'n v. Cowles*, 620 F. Supp. 3d 835, 850 (D. Minn. 2022) (recognizing that "[t]he Eleventh Amendment also bars claims for damages against state employees in their official capacities." (citations omitted)). Schied's claims against the State of South Dakota, the Department of Social Services, and the South Dakota Department of Human Services are dismissed with prejudice for failure to state a claim upon which relief can be granted. Similarly, to the extent that Schied alleges a § 1983 claim against any state official or employee in his or her official capacity for monetary damages, those claims are dismissed with prejudice for failure to state a claim upon which relief can be granted.

28

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Schied's allegations are conclusory and not specific to any named defendant. Thus, he has failed to allege the requisite personal involvement to state a claim for relief under § 1983. In addition to the reasons outlined in Section III.B.1, *see supra* at 24–26, Schied's claims in Count I are dismissed under 42 U.S.C. § 1915(e)(2)(B)(ii) and (iii) for the reasons outlined in this section.

To the extent Schied attempts to state a claim against the State of South Dakota, any state department or agency, or any state official for violating the Americans with Disabilities Act or the Rehabilitation Act, those claims are addressed under Count III.

### 3.   Count II

In Count II of his amended complaint, Schied asserts that the "Module 2" and "Module 3" defendants violated his Fourteenth Amendment procedural due process rights and deprived him of meaningful access to court and administrative remedies. Docket 33 at 31–32. In addition to alleging that these defendants are liable under 42 U.S.C. § 1983, Schied also alleges that they conspired to violate his civil rights and are also liable under 42 U.S.C. § 1985. *Id.*

Claims based on vicarious liability are not cognizable under 42 U.S.C. § 1983. *Marsh v. Phelps Cnty.*, 902 F.3d 745, 754 (8th Cir. 2018). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

29

each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (alteration in original) (quoting *Ashcroft*, 556 U.S. at 676); *Jones v. City of St. Louis*, 104 F.4th 1043, 1050 (8th Cir. 2024). In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Marsh*, 902 F.3d at 754 (quoting *Ashcroft*, 556 U.S. at 677). "A proper § 1983 claim requires factual details about a defendant's personal involvement in the violation of a plaintiff's rights." *Pennington v. Morgan*, 24-CV-00838, 2025 WL 348609, at *2 (W.D. Va. Jan. 30, 2025). The amended complaint does not contain any specific factual allegations stating what any of the individual "Module 2" or "Module 3" defendants did to violate Schied's constitutional rights. *See generally* Docket 33.

According to the amended complaint, "[t]he actions of supervisory and institutional defendants were undertaken personally, through policy authority, through deliberate indifference, through failure to maintain lawful procedures, or through ratification of unconstitutional practices after notice." *Id.* at 32. Again, these conclusory allegations, in the absence of any supporting facts stating what each supervisory state actor allegedly did or did not do to give rise to a supervisory liability claim under 42 U.S.C. § 1983, are insufficient as a matter of law to state a claim upon which relief can be granted.

To state a claim under 42 U.S.C. § 1985(3), Schied must allege: (1) a conspiracy; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of the privileges and immunities secured by

30

the laws; (3) an act in furtherance of the conspiracy; and (4) injury to his person or property or a deprivation of a right or privilege secured for him as a United States citizen. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). Schied must also "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 685 (8th Cir. 2012) (internal quotation omitted). Schied does not allege any specific facts demonstrating that the "Module 2" and "Module 3" defendants reached any agreement. *See generally* Docket 33.

Finally, the South Dakota Supreme Court and the Fourth Circuit Court are identified as "Module 3" defendants, as well as the Chief Justice of the South Dakota Supreme Court, the Clerk of the South Dakota Supreme Court, a state circuit court judge, and a circuit court clerk of court. *Id.* at 16–17. "[A] court is not a 'person' subject to suit under § 1983." *Harmon v. Preferred Fam. Healthcare, Inc.*, 125 F.4th 874, 881 (8th Cir. 2025) (citing *Clark v. Clark*, 984 F.2d 272, 273 (8th Cir. 1993)). But even if a court was a "person" within the meaning of 42 U.S.C. § 1983, an action against it "would be barred by the Eleventh Amendment, anyway." *Clark*, 984 F.2d at 273; *see also Harris v. Mo. Ct. of Appeals, W. Dist.*, 787 F.2d 427, 429 (8th Cir. 1986) (observing that "courts as entities are not vulnerable to § 1983 suits, because they are protected by state immunity under the eleventh amendment")). The judges whom Schied names are entitled to absolute judicial immunity, as are the state court personnel included among the "Module 3" defendants. *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 759–60 (8th Cir. 2019) (holding that a judge

31

is immune from suits brought under § 1983 to recover for alleged deprivation of civil rights); *Hamilton v. City of Hayti*, 948 F.3d 921, 928 (8th Cir. 2020) (recognizing that the doctrine of quasi-judicial immunity extends to court clerks). Similarly, the "Module 2" defendants who serve as state hearing examiners or administrative law judges are also entitled to absolute immunity. *Butz v. Economou*, 438 U.S. 478, 511–13 (1978) (holding that an agency hearing examiner or administrative law judge is "functionally comparable" to a judge and therefore protected by absolute immunity).

In addition to the reasons outlined in Section III.B.1, *see supra* at 24–26, Schied's claims in Count II are dismissed under 42 U.S.C. § 1915(e)(2)(B)(ii) and (iii) for the reasons outlined in this section.

### 4.    Count III

Count III of the amended complaint is "asserted against all defendants who are public entities, recipients of federal financial assistance, state actors, contractors performing public functions, or persons acting in concert with such entities, including those identified throughout Modules 1 through 6." Docket 33 at 32. Count III appears to allege claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). *Id.*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the ADA, a "public entity" includes state and local governments, as well as their

32

agencies and instrumentalities. *Id.* § 12131(1)(A), (B). But because Title II of the ADA provides redress for discrimination by a "public entity[,]" individuals in their personal capacities are not subject to suit under Title II. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010) (per curiam) (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc)). Thus, to the extent Schied's amended complaint asserts claims against defendants in their personal capacities, it fails to state a claim upon which relief can be granted. Some of the defendants against whom Count III appears to be directed are private actors. But Title II of the ADA does not extend to private actors.[5] *Frazier v. Graves*, No. 4:20-CV000434-KGB, 2021 WL 4502150, at *13 (E.D. Ark. Sep. 30, 2021) (collecting cases recognizing that private entities that contract with public entities do not qualify as public entities under Title II of the ADA). Finally, to the extent Schied seeks to assert an ADA claim against any federal agency, department, or employee in his or her official capacity, his amended complaint fails to state a claim upon which relief can be granted because federal agencies and departments do not fall within the definition of "public entity." 42 U.S.C. § 12131(1).

It is well established that official capacity claims against state officials are considered to be claims against the officials' employer, which here is the

---

[5] Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). But none of the private entities named as defendants in Schied's amended complaint are private entities that are considered public accommodations under the Title III of the ADA. *Id.* § 12181(7)(A) – (L).

State of South Dakota. *Will*, 491 U.S. at 71 ("[A] suit against a state official is his or her official capacity is not a suit against the official but rather is a suit against the official's office." (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). The Eleventh Amendment precludes Schied from suing the State of South Dakota or its agencies, including the Department of Social Services, the Department of Human Services, and the Bureau of Administration,[6] in federal court. *Arlt v. Mo. Dep't of Corrs.*, 229 F. Supp. 2d 938, 942 (E.D. Mo. 2002). But Congress may abrogate a state's Eleventh Amendment immunity if Congress unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Id.* (citing *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). The Eighth Circuit has held that Title II of the ADA is "beyond Congress' power under the Fourteenth Amendment's enforcement clause." *Id.* (citing *Alsbrook*, 184 F.3d at 1007). Because the enactment of Title II of the ADA did not validly abrogate a state's Eleventh Amendment immunity, a district court does not have subject-matter jurisdiction over a Title II ADA claim seeking injunctive relief against a state agency and state employees sued in their official capacities. *Id.*

> Section 504 of the Rehabilitation Act provides that:
>
> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or

---

[6] The Bureau of Administration is no longer a separate state administrative agency but continues as part of the Department of Executive Management. *See* SDCL §§ 1-14-1; 1-33-9.1.

34

under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "For a prima facie § 504 violation, a qualified individual with a disability must be denied, on the basis of the individual's disability, the benefits of a program or activity of a public entity receiving federal funds." *Folkerts V. City of Waverly*, 707 F.3d 975, 983 (8th Cir. 2013) (citing *M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 981–82 (8th Cir. 2003)). Section 504 of the RA, like Title II of the ADA, does not provide for claims against individuals. *See Damron v. N.D. Cmm'r of Corrs.*, 299 F. Supp. 2d 970, 979 (D.N.D. 2004), *aff'd*, 127 F. App'x 909 (8th Cir. 2005) (per curiam); *Rudiger v. St. Francois Cnty.*, No. 4:22 CV 1103 RWS, 2023 WL 5748439, at *3 (E.D. Mo. Sep. 6, 2023) ("Section 504 of the Rehabilitation Act simply do[es] not impose liability on individual defendants in their individual capacities." (alteration in original) (citation omitted)). Therefore, any RA claims Schied intended to assert against individual defendants fail to state a claim upon which relief may be granted.

To the extent Schied alleges any claims against any state entity, agency, or department under the Rehabilitation Act, "[t]he Rehabilitation Act requires States that accept federal funds to waive their Eleventh Amendment immunity to suits brought in federal court for violations of Section 504." *Jim C. v. United States*, 235 F.3d 1079, 1081 (8th Cir. 2000) (citation omitted). "Thus, a plaintiff wishing to pursue a Rehabilitation Act claim against the state will need to show that the agency in question waived its Eleventh Amendment immunity with

35

respect to Section 504 of the Rehabilitation Act and that the waiver is valid under the Spending Clause." *Damron*, 299 F. Supp. 2d at 978 (citing *Randolph v. Rodgers*, 253 F.3d 342, 349 (8th Cir. 2001)). Here, Schied does not allege any facts demonstrating that any state entity, agency, or department has waived its Eleventh Amendment immunity with respect to § 504 of the Rehabilitation Act or that any such waiver is valid under the Spending Clause. *See generally* Docket 33.

In addition to the reasons outlined in Section III.B.1, *see supra* at 24–26, Schied's claims in Count III are dismissed under 42 U.S.C. § 1915(e)(2)(B)(ii) for the reasons outlined in this section.

### 5.    Count IV

In Count IV, Schied alleges claims under 42 U.S.C. § 1983, the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the South Dakota State Constitution, and unspecified supplemental state-law claims against the medical provider, local government, law enforcement, and related defendants identified in "Module 4." Docket 33 at 33–34.

"Only a state actor can face § 1983 liability." *Doe v. North Homes, Inc.*, 11 F.4th 633, 637 (8th Cir. 2021). Here, it appears that the medical and prosthetic providers and insurance-related "Module 4" defendants are private actors that cannot as a matter of law be liable under § 1983. Further, Schied does not allege any facts that might be a basis for considering whether any of the private actors might fall within one of the limited circumstances in which a private actor can qualify as a state actor. *See generally* Docket 33.

As the Court understands Schied's amended complaint, it appears that he alleges that the Spearfish Police Department and the Lawrence County Sheriff's Department did not respond appropriately when he alleged that he was a victim of a crime or submitted criminal complaints regarding "threats, fraud, property harms, exploitation, benefit-related coercion, and medical-equipment deprivation." *Id.* at 21 n.31; *see also id.* at 34 ("Law-enforcement and governmental defendants further failed to provide reasonably protective access, equal enforcement, or meaningful protective intervention despite knowledge of [Schied's] disability, vulnerability, and repeated requests for assistance."). But these conclusory allegations do not allege the violation of any constitutional right. *See Jones v. Bowers*, No. CIV-17-727-R, 2017 WL 4334238, at *3 (W.D. Okla. July 28, 2017) (dismissing a § 1983 complaint against deputies for failing to investigate a hit and run incident because it does not allege a constitutional violation), *aff'd*, 737 F. App'x 846 (10th Cir. 2018); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

The Fair Housing Act makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any . . . renter because of a handicap[.]" 42 U.S.C. § 3604(f)(1). It also prohibits discrimination "against any person in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap[.]" 42 U.S.C. § 3604(f)(2). Discrimination under

37

the Fair Housing Act includes a refusal to make "reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" 42 U.S.C. § 3604(f)(3)(B). Schied's amended complaint fails to allege any facts that would give rise to a claim under the Fair Housing Act against any of the Module 4 defendants.

Finally, Count IV purports to state a claim for violation of Article VI, § 29(3) of the South Dakota Constitution, which provides that a crime victim has the "right to be reasonably protected from the accused and any person acting on behalf of the accused[.]" Docket 33 at 33–34. Schied may not seek relief under 42 U.S.C. § 1983 for an alleged violation of the South Dakota Constitution. *See Foster v. Litman*, No. 19-CV-260 (JNE/ECW), 2020 WL 13747050, at *8 (D. Minn. Jan. 3, 2020).

In addition to the reasons outlined in Section III.B.1, *see supra* at 24–26, Schied's claims in Count IV are dismissed under 42 U.S.C. § 1915(e)(2)(B)(ii) and (iii) for the reasons outlined in this section.

### 6.    Count V

Schied's claims against the United States, federal agencies and departments, and federal officials sued in their official capacities are clearly barred by sovereign immunity.[7] *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted).

---

[7] Schied's amended complaint does not allege a claim for damages against the United States under the Federal Tort Claims Act (FTCA), but even if it did, the claim would not survive § 1915(e)(2) screening. The "FTCA bars claimants from bringing suit in

Schied alleges that the "Module 5" defendants violated his Fifth Amendment right to due process. Docket 33 at 34–35. Because Schied sues various federal officials in their individual capacities and seeks nominal, compensatory, and punitive damages, the Court liberally construes Schied's amended complaint to allege claims under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). "A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights." *Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998). In *Bivens*, the United States Supreme Court recognized an implied cause of action under the Fourth Amendment against federal officers for entering and searching the plaintiff's apartment and then arresting him, all without a warrant. 403 U.S. at 389. The Supreme Court has only recognized an implied cause of action for money damages under the Constitution in two other contexts: a Fifth Amendment equal protection claim under the Due Process clause against a Congressman for gender discrimination, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and an Eighth Amendment claim against federal prison officials for failure to treat an inmate's serious medical need that resulted in his death, *Carlson v. Green*, 446 U.S. 14, 24 (1980). *See Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017) (recognizing that "[t]hese three cases—

---

federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). Schied has not alleged that he exhausted his remedies under the FTCA before filing suit. *See generally* Docket 33. Exhaustion is a jurisdictional prerequisite before filing a FTCA claim in district court. *Porter v. Fox*, 99 F.3d 271, 274 (8th Cir. 1996) (per curiam).

*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

A *Bivens* remedy is not available for all constitutional violations and expanding the implied cause of action under *Bivens* is "a 'disfavored' judicial activity." *Id.* at 135 (citing *Iqbal*, 556 U.S. at 675). The Eighth Circuit Court of Appeals has adopted a "presumption against judicial recognition of direct actions for violations of the Constitution by federal officials." *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) (quoting *Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005)).

In deciding whether to extend a *Bivens* remedy, the Court engages in a two-step inquiry. *See Egbert v. Boule*, 596 U.S. 482, 492 (2022). First, the Court considers whether the claim at issue is "'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* (alteration in original) (quoting *Ziglar*, 582 U.S. at 139). If the claim has not been previously recognized as a *Bivens* claim, the court proceeds to step two. At step two, the Court asks "if there are 'special factors [that] counsel[] hesitation'" before implying a new cause of action "in the absence of affirmative action by Congress." *Ziglar*, 582 U.S at 136 (quoting *Carlson*, 446 U.S. at 18). Related to this second step is the question of whether an alternative remedy exists. *Id.* at 137; *see also Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). If a court has "reason to pause before applying *Bivens* in a new context or to a new class of defendants—[it should] reject the request." *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020).

Here, there is no doubt that Schied seeks to present a *Bivens* claim in a new context. There is also no doubt that special factors counsel against extending *Bivens* to Schied's Fifth Amendment due process claim. Schied seeks to have this Court second-guess the administration of numerous federal benefit programs and appears to challenge the very structure underlying the coordination of benefits at the state and federal levels. The Court declines to recognize a *Bivens* claim in this new, unique, and unprecedented context. In addition to the reasons outlined in Section III.B.1, *see supra* at 24–26, Schied's claims in Count V are dismissed under 42 U.S.C. § 1915(e)(2)(B)(ii) and (iii) for the reasons outlined in this section.

### 7.   Count VI

As this Court understands Schied's amended complaint, Count VI is directed against the United States District Court for the District of South Dakota, the Clerk of Court of the District of South Dakota, and the undersigned and arises out of the management of this case since it was filed on December 19, 2025.[8] *See* Docket 33 at 27, 35–36. Amending a complaint to assert claims alleging that a pending case has been mishandled is inappropriate and not permitted by any applicable statute, rule, or case law. If Schied contends that any of the undersigned's rulings are erroneous, his

---

[8] It appears that Schied seeks to assert claims against the Eighth Circuit Court of Appeals related to the dismissal of his appeal from this Court's order dismissing his initial complaint without prejudice. *See* Docket 33 at 27 n.40. Additionally, Schied seems to be asserting claims against Judge Piersol and Judge Lange related to previous cases he has filed in the District of South Dakota, although neither of those cases was assigned to Judge Lange. *See id.* at 11, 27.

41

remedy is to appeal at the appropriate time, not to attempt to add the undersigned as a defendant in this action.

Schied's allegations related to actions by the Clerk of Court and Clerk of Court staff appear to relate to the fact that this case was filed under seal and because the case was under seal, Schied could not electronically access his filings to confirm that they had been docketed as he intended. Docket 33 at 28, 35–36. Schied seems to allege that the same thing occurred when his two previous civil actions in the District of South Dakota were pending. *Id.* at 27–28. Initially, it must be noted that the record was sealed because Schied attempted to file a *qui tam* action under the False Claims Act, and federal law requires that the action be maintained under seal for a period of time. 31 U.S.C. § 3730(b)(2) (providing that complaints filed by private persons must be "filed in camera" and "remain under seal for at least 60 days"); *see also* Docket 1. To the extent that there was confusion or misunderstanding as to how Schied's voluminous filings should be docketed, Schied's failure to comply with the Federal Rules of Civil Procedure, rather than any misconduct by the Clerk of Court staff, is the source. *See* Docket 22 at 16–17 (describing the voluminous materials Schied submitted for filing).

Schied's claims in Count VI, as the Court understands them, are subject to dismissal because all the defendants against whom the claims are directed are absolutely immune. It is well established that judges are absolutely immune from civil lawsuits alleging misconduct during the performance of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam).

42

Judicial "immunity applies even when the judge is accused of acting maliciously and corruptly[.]" *Pierson v. Ray*, 386 U.S. 547, 554 (1967). There are only two situations where judicial immunity can be overcome: (1) when a judge is sued based on nonjudicial actions, and (2) when the judge acted in the complete absence of jurisdiction. *Mireles*, 502 U.S. at 11–12. Schied's allegations all relate to judicial actions. When a pro se litigant moves for leave to proceed in forma pauperis, federal law mandates that the district court judge screen the complaint under 42 U.S.C. § 1915(e)(2). There are no allegations that could be liberally construed to allege that any of the judges identified as "Module 6" defendants are being sued for nonjudicial actions or acted in the complete absence of all jurisdiction. *See generally* Docket 33.

Judicial immunity has been extended to other judicial officers, such as court clerks. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993). As to court clerks, the Eighth Circuit has held that they are entitled to absolute immunity for "acts that are discretionary, taken at the direction of a judge, or taken according to court rules." *Hamilton*, 948 F.3d at 928. A court clerk who maintains a purported *qui tam* action under seal in accordance with a specific federal statute is entitled to absolute immunity. *See Ilaw v. United States*, No. 11-CV-5000 RMV, 2012 WL 629244, at *2 (N.D. Cal. Feb. 27, 2012) (stating that "the maintenance of case files and sealing of documents are basic and integral parts of the judicial process. . . [and] the clerk of the court and deputy clerks are the officials through whom such actions are taken[,]" making such actions subject to quasi-judicial immunity).

**IV.    Conclusion**

Based on the foregoing analysis, it is ORDERED:

1.    That Schied's amended complaint, Docket 33, is dismissed without prejudice for failure to state a claim upon which relief can be granted.

2.    That Schied's motions for reasonable ADA accommodations[9] (Dockets 6, 9) are denied as moot.

3.    That Schied's motion for service of process by United States Marshals Service (Docket 8) is denied as moot.

Dated June 12, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

---

[9] When Schied commenced this action, he filed a motion to electronically file documents in CM/ECF. Docket 10. The Court granted his motion. Docket 15. Upon receipt of the motion, the Clerk of Court's office notified Schied that when the case is unsealed, he would begin receiving electronic notice of unsealed documents filed in the case. *Id.* When the Court dismissed Schied's original complaint, the Court explained that Schied, as a pro se litigant, cannot pursue a *qui tam* action on behalf of the United States and ordered that the case be unsealed. Docket 22 at 24–25. To the extent that Schied is seeking relief under the ADA or the RA, it is clear that neither of these statutes apply to the federal judiciary. *See, e.g., Kyndryl, Inc. v. Cannady*, No. 23-03279-CV-S-BP, 2023 WL 11960630, at *2 (W.D. Mo. Oct. 25, 2023). The Court understands that that Clerk of Court staff has devoted substantial time and resources attempting to comply with Schied's filing instructions and requests for information, but even if the ADA or RA applied to the federal judiciary, it is not reasonable to excuse any pro se litigant from complying with Federal Rules of Civil Procedure and local court rules enacted to ensure that this Court can manage its docket to promote the "just, speedy, and inexpensive determination" of all cases for all litigants. *See* Fed. R. Civ. P. 1.